## UNITED STATES v. WHITE.

### (District Court, D. Maryland. June 14, 1906.)

1. POST OFFICE—POSTAL OFFENSES—USE OF MAILS TO DEFRAUD.

On the trial of a defendant charged, under Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], with using the mails to effect a scheme or artifice to defraud, where it is shown that defendant published advertisements and sent out circulars and letters offering to impart to persons communicating with him, in return for money sent him, instructions as to how they could acquire occult and supernatural powers, the question for the jury to determine is, not whether or not it was possible for him to impart such information, but whether he honestly and in good faith intended to do so, and upon such determination the question whether he believed himself able to do so is material.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Post Office, § 55.]

2. SAME—SCHEME TO BE EFFECTED THROUGH MAILS.

On the trial of a defendant indicted, under Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], for using the mails in carrying out a scheme to defraud, evidence that defendant published advertisements soliciting persons who read them to write to him, and that when he received letters from such persons he had made all arrangements to carry on a systematic correspondence with them through the mails, warrants a finding that the scheme or artifice was one to be effected by means of the post office establishment of the United States, within the meaning of the statute.

3. SAME—SCHEME OR ARTIFICE TO DEFRAUD.

A scheme by a defendant, to be effected by means of letters sent through the mails, to induce persons receiving such letters to purchase from him paper made in imitation of parchment at the price of $1 per yard, by representations made in such letters that the paper was pure parchment, and that certain charms, if written on pure parchment, would have certain influences on the lives of the persons who used them, if defendant knew that such paper was not pure parchment, and was worth much less than $1 per yard, was a scheme or artifice to defraud to be effected by use of the Post Office Department, within the meaning of Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696].

4. SAME.

A scheme by a defendant to induce persons by means of letters sent through the mails to send him $1 each in payment for a special life reading, giving the horoscope of the sender and the events of his life from the cradle to the grave, is a scheme or artifice to defraud to be effected by the use of the Post Office Department, within the meaning of Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], if in consideration of the payments so sent defendant returned and intended to return to the senders a stock letter purporting to be a special life reading, but which were alike in each case, regardless of the age, color, or sex of the recipient.

## Court's Instructions to the Jury.

John C. Rose, Dist. Atty., and Morris A. Soper, Asst. Dist. Atty., for the United States.

Thomas G. Hayes and Robert F. Leach, Jr., for traverser.

MORRIS, District Judge (charging jury). You have given most patient attention to the testimony in this case, and now it will soon become your serious duty to decide it.

The Congress of the United States has enacted laws to exclude from the mail all schemes devised to defraud by the use of such mails. It

has sought to protect the public from intentional schemes to cheat intended to be carried into effect by means of the postal facilities supplied by the government. The duty of protecting the community against such schemes through the enforcement of this law rests, in the first instance, upon the proper law officers of the government. As you have seen, this obligation they faithfully try to meet, but no criminal law can be enforced except by the verdict of the jury, and therefore the efficiency of every law depends on the intelligence and fidelity of the jury. In this case the government, by the witnesses it has produced, has been endeavoring to establish to your satisfaction that the very great use which the defendant, during a period of over a year, was admittedly making of the mails, was not an honest and legitimate use, but a dishonest and a fraudulent use, and the grand jury has so charged in its indictment. It is for you to determine whether or not that indictment, or any count of it, has been proved to your satisfaction beyond a reasonable doubt. As you have heard from the witnesses, and from the defendant himself, the defendant advertised largely that to any one who would communicate with him he would be able to impart most wonderful and important knowledge and power. The point which you are to consider and determine is, not whether it is possible that the things which the defendant promised to do could be possibly done by any one, but whether it has been proven to you that this defendant did not intend to do what he promised he could and would do. In determining that question, you are entitled to consider and weigh every fact and circumstance which you find to have been proved which in your judgment throws light upon his good faith. The question is: Did he honestly, in good faith, intend to do the things which he promised he could and would do, as the consideration for the money which he proposed to himself to obtain from those with whom he opened up communication through the post office as charged in the indictment?

In his preliminary pamphlet entitled "Blessings to All Mankind," "The Greatest Secrets Ever Revealed," he describes the book he had to sell which you know as the "Red Book." By studying that book he asserts that the student can learn, during his spare hours at home, Spiritualism, Hypnotism, Willism, Magnetism, Selfism, Mental and Magnetic Healing, and White and Black Art. With regard to Personal Magnetism and Selfism, he states that you should purchase his book and learn, understand, and master it, because it will give you the mastery of minds and the ability to mold at pleasure the human will; that it will enable you to treat diseases; that it is a miracle worker, and an agency of success, position, wealth, and fame; that it is available to young and old of either sex, and that it is his proud boast to have made it the most easily acquired and profitable profession known to man or woman; that this force gives a person the power to change their life into one grand success; that the defendant's complete system of operating enables you to turn all failures into absolute success and happiness, raises you from poverty and obscurity to the proud position of a conqueror of the world, and causes you to have love, wealth, health, and prosperity. There were many more positive promises, as you have been made aware by the reading of this little pamphlet which has been put in evidence for your information.

## The Indictment.

Although there are five counts in the indictment, there are only three separate offenses against the law charged in the indictment; that is to say, there are only three separate letters alleged to have been mailed by the prisoner. The first of these is set forth in the first, second, and third counts of the indictment. It is what has been referred to in the testimony as the "second letter" that is the letter which in the evidence has been described as the "second" in the series of letters which, according to the evidence, were sent out by the prisoner to persons whom he desired to induce to subscribe for the courses of instruction. The letter is the one addressed to Helen Bongart, Harrisburg, Pa., and is dated 10/17/05; that is, the 17th of October, 1905. The letter mentioned in the fourth count of the indictment is a letter alleged to have been written to Addie M. Davis, and is dated 11/6/05; that is, the 6th of November, 1905. It acknowledged the receipt of $1 for which, as it says, "We are selling you a yard of pure parchment." The remaining letter is one of the so-called horoscope of life-reading letters addressed to Virginia A. Mason, and is alleged to have been mailed on the 29th of March, 1906. Helen Bongart, Addie M. Davis, and Virginia A. Mason have all been on the witness stand, and each one has testified that she received the letter from the defendant addressed to her, and Miss Hannan's testimony and the cards and records found in the prisoner's possession indicate that such letters were sent out to the persons named in the indictment. This is legally sufficient evidence, if it actually convinces you, to justify you in finding that the three letters were mailed, as charged in the indictment.

It is also necessary for the government to show that the scheme or artifice to defraud charged against the prisoner was one which was to be effected by opening communication with divers persons by means of the post office establishment of the United States; and by inciting said persons to open communication by means of the said post office establishment with him. There is much evidence that the defendant advertised extensively in various parts of the country, and that in the advertisements he urged the persons reading them to write to him, and that when he received letters from such persons he had made all arrangements to carry on a systematic correspondence through the mails with such persons. This evidence, if you believe it, is legally sufficient to justify you in finding that the schemes and artifices to defraud charged against the prisoner in the indictment, if you shall find that he had, in point of fact, devised such schemes or artifices to defraud, were to be effected by opening communication with divers persons by means of the post office establishment of the United States, and by inciting such persons to open communication with him through such establishment. That the scheme was to be effected through the use of the post office establishment of the United States, and that the prisoner caused the three letters named in the indictment to be put in the mail, are matters about which, under the evidence in this case and the defendant's own testimony, you will probably have no difficulty, as that is not one of the matters contested by the defendant.

It remains, however, for the government to satisfy you that those

letters were mailed in and for executing the schemes and artifices to defraud which are charged in the various counts of the indictment. These schemes and artifices to defraud, leaving out the technical and uncontroverted matters, are as follows:

In the first count the defendant is charged with having intended to lead persons who might read his advertisements to believe that by communicating with him by mail they could obtain from him instructions as to how they and each of them might acquire occult and supernatural powers, and that he intended then to falsely and fraudulently pretend to such persons that, in return for such sums of money as he might name to them, he would teach such persons to acquire occult and supernatural powers, and would in return for other sums of money furnish such persons with charms and amulets, and the means and materials for preparing charms and amulets, which charms and amulets the prisoner intended to falsely and fraudulently pretend would have occult and magical powers. The advertisements, and the circulars, pamphlets, and letters in evidence sent through mails, are legally sufficient to justify you in finding that the defendant did intend to lead persons who might read the advertisements, and receive from him the pamphlets, circulars, and letters, to believe that they could by correspondence obtain from him instuctions as to how they and each of them might acquire occult and supernatural powers, and that he would, in return for the sums of money they sent him, teach such persons how to acquire such occult and supernatural powers, and that in return for other sums of money he would furnish them with charms and amulets and the means and materials for preparing charms and amulets which would have occult and magical powers. This first count of the indictment further charges that such pretense on the part of the defendant was, at the time it was made, false and fraudulent, and at the time of devising the scheme and of mailing the letter named in the count he knew that he could not and would not enable the said persons, or any of them, to acquire any occult or supernatural powers, and knew that said charms and amulets had no magical power, and that the defendant devised the scheme with the fraudulent purpose of defrauding each of such persons who should pay him such sums of money, and of fraudulently and corruptly appropriating the same to his own use. If you find that, at the time when he made the alleged pretenses and mailed the letter, he knew that he could not and would not enable the persons, who paid him money in order to acquire such occult and supernatural powers, to acquire them, you will have little difficulty in finding that his purpose in making such false pretense was the fraudulent one of defrauding each of such persons out of sums of money they should pay him and of converting such sums to his own use. The guilt or innocence of the defendant under this first count, therefore, you will doubtless consider turns on whether or not the defendant knew that he could not and would not confer upon the persons who paid him money the occult and supernatural powers which the evidence may satisfy you he promised to confer upon them. This is a question of fact to be determined by you upon the whole evidence. You cannot see into the mind of the defendant or into the mind of any one else. But you are to determine upon all the facts and cir-

cumstances proved in the case whether you are satisfied from the whole evidence that, at the time he devised his scheme and mailed his letter, he well knew that he could not confer upon the persons, upon whom he had promised to confer occult and supernatural powers, such powers, and that he knew at that time that the charms and amulets he sent out, or the materials for them which he sent out, had no occult or supernatural powers whatever.

In the second count it is charged, as in the first count, that the prisoner intended to induce persons to communicate with him through the post office establishment of the United States by means of advertisements inserted in divers newspapers and magazines and in other ways. This second count states in general terms the character of the advertisement. It charges that in such advertisements he promised to send, absolutely free, to any persons who would write to him for the same, a wonderful book, the latest and most powerful of its kind ever published, and which any one could master, and which would tell, said person how to rise from sadness, disappointment, weakness, poverty, and drudgery to health, wealth, power, and prosperity. The said advertisements, the second count of the indictment alleges, were to assert that such book was full of valuable secret information and was illustrated with pictures showing how and what to do to have a bright future; how to cure one's self and others of all diseases; how to avoid future mistakes and bad habits. The said advertisements went on further to assert that said book fully explained the secret of Hypnotic Force, Personal Magnetism, Willism, Selfism, Mental and Magnetic Healing. Evidence has been offered legally sufficient to establish that advertisements substantially in the language charged in the indictment were inserted by the prisoner in various newspapers and magazines and were printed on cards, the distribution of which the defendant cause to be made.

The said second count further charges that the prisoner intended and proposed to send each of the persons, who in consequence of such advertisement should communicate with him, a booklet entitled "Blessings to All Mankind," describing therein a volume called "A Higher Correspondence Course in Spiritualism, Hypnotism, Personal Magnetism, Mental and Magnetic Healing, Spiritual Planetary Reading and White and Black Art," declaring in such booklet that said course contained readings and teachings strictly original, borrowed from no one, but received from spirit guides and forces, and years of practical experience from all parts of the world, and in said booklet promising and guarantying that said course would enable the person with whom the defendant was corresponding to be a true Spiritualist, and thereby clearly to see through the past, present, and future, and to know the full life of any person from infancy to old age, and to have power to guide and direct the events of said person's life at pleasure; and that said course would enable the persons with whom the prisoner was corresponding to understand and practice Hypnotism, whereby, among other things, it would be easy to cure others of the drink habit and the cigarette habit; and that such course would enable said persons to understand and know Personal Magnetism and Selfism, whereby the persons so understanding and knowing the same would have great

success in any profession, occupation, or undertaking; and that said course would show said persons, through its instructions in Clairvoyance and White and Black Art, how to locate the secret hiding places of buried treasures, and how to have power over good spirits so as to ward off evil influences, and how to reunite the separated; and that said course would enable said persons to understand and master mental and magnetic healing, and thereby to heal all diseases of said persons and others. Said count further charges that the defendant in said booklet intended and proposed to guaranty himself to be able and willing to cause said person to gain perfect health, no matter from what sickness said person might be suffering, and intended and proposed to promise in said booklet to give, if said person should order and pay for said course, five weeks mental treatment for any complaint or disease said person might chance to have, and to secure for said person thereby immediate relief; and the said count further charges that said defendant intended and proposed in said booklet to declare that he would cure all diseases and remove all troubles of those who did not care to study said course at a small cost, and that he would, free of charge, cure all diseases and remove all troubles of those who should become students of said course. Many copies of a booklet, which, according to the evidence, was prepared and caused to be printed by the defendant, and by him sent out through the mails to very many people, have been offered in evidence. This evidence is legally sufficient to justify you in finding that the defendant proposed to send out such pamphlets as is described in the second count of the indictment.

The second count further charges that the prisoner intended and proposed to send with the booklet a letter reiterating the promises and guaranties contained in the booklet, declaring that he could place the person receiving the same in possession of the greatest power between heaven and earth, and offering to send the course heretofore mentioned to said person for the sum of $7; the prisoner intending and proposing, as the said second count of the indictment charges, by said advertisements, correspondence, and booklet, to induce the persons with whom he was so corresponding to buy said course. Many copies of what is called the "first letter" have been offered in evidence, and evidence has been offered to the effect that such letters were prepared by or under the direction of the defendant, and were under his direction sent out through the mails to very many persons. The evidence is legally sufficient to justify you in finding that it was part of the prisoner's plan, or of his scheme or artifice, as the indictment, following the language of the statute, calls it, to send out such so-called "first letter."

The second count further charges that, to persons who were not induced by said advertisements, correspondence, and booklet to send said sum of $7, the prisoner intended and proposed to send a second letter, stating that he was personally interested in said person, because the prisoner knew said person could become wonderfully successful with the work treated of in said course, and by means of said course to read the life of any one, see into said person's future, perform astonishing miracles, and cure all diseases and afflictions; and said letter would further urge said person to send said sum of $7 for said

course. Many of the so-called "second letters" have been offered in evidence. Evidence has been offered to show that the defendant caused said letters to be prepared and printed in large quantities and caused them to be extensively sent out through the mails. This evidence is legally sufficient to justify you in finding that the sending out of such letter was part of the prisoner's scheme or artifice.

The second count of the indictment further charges that the defendant intended, a short time after sending the second letter, to send to each of the persons who had not been induced to send him said money a third letter, and in said third letter to urge said person to send $7 for said course, and in said letter the said defendant proposed to state that, while looking over a few of the many thousands of letters received by him from grateful ladies and gentlemen who claimed his power and assistance had wonderfully benefited them, he had come across the name of said person so failing to subscribe for said course, and was just about to destroy it; but all at once he discovered from the handwriting that said person possessed a most powerful character, and also a most wonderful mediumistic influence, and that the said person did positively possess wonderful powers which could be developed to an extreme degree for professional services or for personal use, and that by means of said wonderful force, if developed by the use of said course, the said person could rise in life and could remove all unpleasant surrounding influences and thoroughly understand and read the lives of the people that said person knew, and that said person could have the power to cure himself and others of all diseases. Many copies of this so-called "third letter" have been offered in evidence, and evidence has been offered that the defendant caused said third letter to be printed in large quantities and to be sent out to very many persons. This evidence is legally sufficient if it so satisfies to justify you in finding that the sending out of this third letter, as said third letter is described in the indictment, was a part of the prisoner's scheme or artifice.

The second count of the indictment further charges that the defendant intended to send this third letter to each of the persons with whom he had been in communication, and who had not been theretofore induced to send him money for said course, whatever the handwriting of said person might be, and entirely irrespective of any indications which said handwriting might give the defendant of the character or powers of said persons, and fraudulently intending by said third letter to induce each of said persons to believe himself possessed of wonderful powers which could be developed by the use of said course, and induce each of said persons to buy said course. As has been said in connection with the first count, it is your province to gather the intent of the prisoner in this matter from all the evidence bearing upon the subject. Very many witnesses have testified to receiving such letters. Other witnesses have proven that the prisoner had caused such letters to be prepared in great quantities, and that in his systematic card catalogue he had a place prepared for recording with little labor the fact that such letter had been sent. You have seen the various witnesses who have testified that they have received such letters. There are among them men and women, white and colored, young and old, and of

150 F.—25

apparently very different characteristics and degrees of natural intelligence and acquired information. It will be for you to say upon the whole evidence whether you believe the defendant intended to send these letters out to such persons as he thought might be induced by the receipt of such letters to pay him money, entirely irrespective of any belief that the prisoner might or might not have formed, from an inspection of the handwriting of such persons, as to the possession by them of wonderful mediumistic powers.

The said second count of the indictment further charges that the defendant intended to send to those persons, who did not in consequence of the third letter send him money, a fourth letter, offering said course for $5, and subsequently a fifth letter offering said course for $3, and a sixth letter offering the same for the sum of $2 cash and $1 in 90 days. Many of such letters have been offered in evidence, and evidence has been offered that the defendant caused such letters to be prepared in large quantities and to be sent out through the mails. Such evidence is legally sufficient to justify you in finding that the sending out of such fourth, fifth, and sixth letters was a part of the prisoner's scheme or artifice.

The second count charges that the prisoner intended to send to each person who should be induced to subscribe to said course and to pay for the same a volume entitled "A Higher Course in Spiritualism, Hypnotism, Personal Magnetism, Mental and Magnetic Healing, Spiritual and Planetary Reading, and White and Black Art." Evidence has been offered that the prisoner prepared and caused to be printed in large quantities a book with such a title, and that he sent or caused to be sent to such persons who subscribed for his course such book. Such evidence is legally sufficient to justify you in finding that the sending of such book, as charged in the indictment, is a part of his scheme or artifice.

The second count then charges that the prisoner, at the time he published said advertisements and sent out said correspondence and the said volume, well knew that the persons to whom said volumes were sent could not acquire therefrom the powers or receive the benefits promised by the prisoner, and well knowing that he (the prisoner) did not possess the knowledge and powers set out in the guaranty and said pamphlet and correspondence as before set forth in the said count of the indictment. Again, this is a question to be determined by you from the whole evidence. You may look at all the evidence believed by you to be worthy of credence, and which to your mind tends to show whether or not the prisoner did believe that he could confer upon the persons to whom his books were sent the powers and advantages and blessings which in the correspondence he promised them.

The count further charges that his intent was to defraud the persons who should send him money out of the same, and to fraudulently appropriate such money to his own use. If you shall find that, in his advertisements, his booklet, and in his correspondence, he promised to confer upon those who should take and pay for his courses the powers and benefits which he knew he could not confer upon them, you will be legally justified in holding that he devised the said scheme with intent to defraud such persons out of their money.

The second count further charges that it was a part of the prisoner's scheme to sell a paper made in imitation of parchment as pure parchment at the price of $1 a yard, although the paper so sold was worth greatly less than the sum of $1 a yard; and to induce persons to buy such imitation parchment by representing it to be pure parchment, and by setting forth in said correspondence course that certain charms if written on parchment would have certain influences over the lives of those who used them, and, among said powers, to prevent evil, to cause success, and to cure diseases. There is much evidence to the effect that the prisoner wrote or caused to be written and mailed many letters setting forth that certain charms, if written on pure parchment, would have the effect charged in such count of the indictment. There is much evidence that the prisoner sold many yards of a paper made in imitation of parchment at $1 a yard, and that the prisoner represented such paper to be pure parchment. There is evidence that he knew it was not pure parchment, and that what he sold was worth very much less than $1 a yard. This evidence is legally sufficient, if believed by you, to justify you in finding that the allegations of the second count of the indictment with reference to the parchment are made out.

The said second count further charges that another portion of the prisoner's scheme or artifice was to send to each of the persons who subscribed to his correspondence course a letter promising for the sum of $1 to read the life of said person, and thereby to reveal the entire future, so that not one point of importance in the life would be left untold, and so that said person might know just what was in store for him and how to avoid all future trouble, worry, and mistakes, and make life a grand success. In said letter, the said second count of the indictment charges that the prisoner intended to request that the person to whom it was addressed should send the date and month of his birth and a lock of his hair or his photograph, or a small piece of cloth, and before placing the same in the envelope to hold it in his hands for a few minutes and concentrate his mind upon his affairs and upon the defendant. The indictment charges that it was intended that this letter should allege that these articles so sent the prisoner would enable the defendant to read the life of the person sending them from the cradle to the grave. Many of the so-called horoscope letters have been offered in evidence, and evidence has been offered that the defendant caused such letters to be printed in large quantities and sent out through the mails. This evidence is legally sufficient to justify you in finding that the sending out of such a letter was a part of the prisoner's scheme or artifice.

The second count further charges that the prisoner intended to cause to be printed in large quantities 12 circulars, to be designated, respectively, by the names of the 12 signs of the zodiac named therein; and the count further charges that the prisoner further intended to cause to be printed in large quantities a circular purporting to be a special life reading for a particular individual, and that to each person who should send him $1 for a life reading the prisoner intended to send a copy of that one of the said 12 circulars bearing the name of that sign of the zodiac which covered the period of the year within which said person was born, and also a copy of the circular purporting to be a

special life reading for a particular individual, and that the prisoner intended, thereby fraudulently to secure for himself said sum of $1, and to deceive said person and to induce said person to believe that he (the defendant) by the power of clairvoyance had learned the character and disposition of the particular influences and circumstances, past and future, surrounding the life of said person, and had set out the same in said circulars, although the indictment charges that said circulars were intended to be printed in large quantities, as aforesaid, without reference to said influences and said circumstances or to the lock of hair, photograph, or piece of cloth so to be requested to be sent, as aforesaid. Evidence has been offered that the prisoner caused these 12 circular letters, one for each sign of the zodiac, to be printed in large quantities; that he also caused to be printed in large quantities a letter which has been referred to in the testimony as the "special life reading"; that there was only one of these forms of letters printed; and that he had sent, or caused to be sent, a copy of this same standard or stock letter to every person who applied for a special life reading and paid him $1 therefor, entirely irrespective of the sex, age, color, circumstances, conditions, or surroundings of such person. Such evidence is legally sufficient to justify you in finding that the portion of the second count of the indictment relating to such special life reading is made out.

In short, the frauds charged in the second count of the indictment are that the prisoner, knowing that he could not confer the powers and benefits promised in his circulars, booklet, and correspondence, to those who should pay him money for his so-called courses, made such promises falsely and fraudulently with intent to obtain their money from them and to appropriate it to his own use; and that, in order to sell imitation parchment paper at a price greatly above its true value, he falsely represented that it was pure parchment, and that charms and seals written upon it would have magical power, although he knew they would not; and, third, that, in order to induce people to send $1 for a special life reading, he said that he could read their life from the cradle to the grave, and that by the power of Clairvoyance he could do it and send them the result of such reading, when, in point of fact, he intended to send them nothing but a copy of a stock letter which he had prepared by the thousands, and intended to send the same letter to every one who sent him $1 for a special life reading. To convict under the second count, it is necessary for you to find that he intended to perpetrate each one of these frauds.

The third count is precisely like the second, except that it does not include the allegation that the parchment device and the special life-reading device were a part of his scheme. In other words, if you are satisfied that, when he published his advertisements and sent out his letters, he knew that he could not confer upon the persons who sent him money for his courses the powers and benefits he had promised, but should not be satisfied as to his guilt under the parchment charge or the life-reading charge, you could convict under the third count, and not convict under the second. On the other hand, if you convict under the second count, you may also convict under the third, because in that case, not only all the allegations of the second count, but all

the allegations of the third count, should have been established to your satisfaction.

## Parchment Scheme.

The fourth count confines itself to the parchment scheme. It is substantially like that portion of the second count which deals with the parchment scheme with the necessary introductory averments. If you believe the parchment scheme to be made out as charged in this fourth count, but are not satisfied that the prisoner, at the time he inserted his advertisement and sent out his letters soliciting the purchase of his courses, did not know that he could not confer upon the persons purchasing the said courses the powers and benefits promised by him, then you will acquit under the second and third counts, and convict under the fourth.

Life Reading. The fifth count deals exclusively with the life-reading device, and, with the necessary introductory averments, is substantially identical with the life-reading portion of the second count, and the same principles as to law and evidence apply to it. In short, if you are satisfied that the letters charged in the various counts were actually mailed by the prisoner, or that under his direction they were mailed, in furtherance of the schemes mentioned in the respective counts in which each of the letters are set forth, and that such scheme was intended by the prisoner to be effected through the use of the post office establishment of the United States, by opening communication with others through said post office establishment, and by inciting others to open communication with him through the said establishment, and you are further satisfied that the prisoner, at the time he inserted such advertisement and sent out the pamphlets and letters set forth in said indictment and offered in evidence, knew that he could not confer upon the persons purchasing his said correspondence course the powers and benefits he promised them, and are further satisfied that he falsely and fraudulently, for the purpose of inducing people to buy imitation parchment at a grossly excessive price, represented to them that it was pure parchment, and that certain charms and seals would have magical effect if written on such parchment, and would not have it if otherwise written, and are further satisfied that he intended to obtain $1 each from large numbers of persons by representing to each one of those persons that in return for such $1 he would by his clairvoyant powers read that individual's life from the cradle to the grave, and send such individual a result of such reading, when, in point of fact, he purposely intended to send to each individual, so sending him $1 for such special life reading, merely a copy of a letter printed by the thousands, and each copy identical with all the others, then you may find the defendant guilty on all the counts, and may return a general verdict of guilty. You cannot convict on the second count, unless you believe that all these three schemes form part of his fraudulent design, and were each and all proved, as I have instructed you. On the other hand, you can convict on the first and third counts whether you believe that the allegations of the fourth and fifth counts as to the parchment and life readings are made out or not, provided you are satisfied that the first and third counts, as you have been instructed, are made out, and you

can convict on either the fourth or the fifth counts, although you do not believe the evidence sufficient to justify a conviction on either the first, second, or third counts, provided you do believe the evidence sufficient to justify a conviction under the fourth or the fifth, or both, as herein pointed out.

I have tried to make plain to you the scope of the different counts of the indictment which of necessity are somewhat technical in their language. I have not commented on the evidence, because it is your province to determine what facts the evidence has proved to you. It is my duty to explain the law to you, but it is your exclusive duty to determine the facts, and, as to them, anything I might say to you has no binding force, as it is your sole and exclusive province to pass upon the facts.

### Presumption of Innocence.

This defendant is presumed to be innocent until you are satisfied from the evidence of his guilt beyond a reasonable doubt. It is your duty to give him the benefit of this presumption of innocence, and the benefit of any reasonable doubt of his guilt which you may have after considering the weight of all the testimony. But if, after weighing all the testimony, you have no reasonable doubt in your minds, and have an abiding conviction of his guilt, you should find a verdict of guilty as to any or all of the counts as to which you are satisfied of his guilt.

### Issue to be Decided by the Jury.

You are not required, in determining this case, to decide as to the truth or falsity of any of the alleged manifestations, or phenomena of what are called Spiritualism, Clairvoyance, Hypnotism, Personal Magnetism, Mental Healing, Spiritual and Planetary Readings, or White and Black Art, but the matter you are to consider is whether the defendant intended to do the things which he promised to do in order to obtain the money sent to him, or whether, on the other hand, he was guilty of a conscious and intentional fraud in promising for the money to do and to teach things which he knew he could not do, or did not intend to do or teach. When he promised to give for $1 Psychic and Trance Clairvoyant Readings telling the applicant of his past and present life, and also revealing in the most perfect manner his entire future, so that there would not be one point of importance in the applicant's life history left untold, consisting of the greatest truths ever revealed by mortal man, did the defendant intend to attempt to do anything of that kind, or did he intend to send to every applicant who paid the $1 fee the same reply, printed by thousands, and made up and sent without reference to the individual applicant, or his lock of hair, or photograph, or piece of cloth, or any impression which the defendant had received with the application? To determine this question you do not have to determine whether or not there is such a thing as Pyschometry or Clairvoyance and Trance Readings, but simply was this, on the part of the defendant, a conscious and intentional fraud.

So, with regard to the parchment, the question for you as jurors is, not whether charms have any efficacy, but whether the defendant intended to send for the $1 the things he had promised to send; and

so, with regard to the book of courses, the question for you, as jurors, is, not whether there is any basis of facts for the so-called occult sciences of Spiritualism, Hypnotism, Personal Magnetism, Mental Healing, Magnetic Healing, Planetary Readings, and White and Black Art, but whether the defendant intended by his book to teach those who paid for the book the things he professed by the book to teach, or whether he consciously and fraudulently intended to furnish them with a book which he knew could not accomplish what he promised the purchasers it would accomplish.

### Defendant as a Witness.

The defendant has made himself a witness in his own behalf, and his testimony is to be weighed by you just as you would weigh the testimony of any witness. You may, in judging of his testimony's weight, consider its truthfulness or want of truthfulness, as you may find it, its consistency or inconsistency with itself and with any fact or facts you may find to have been proved in the case. You may consider the deep interest which the defendant has in the result of the case, just as you would judge of the testimony of any witness who testified in a case in which he was personally interested, and how far his interest may, in your judgment, affect his credibility; but, all these matters being considered, you should give to his testimony the weight to which you think it is entitled.

From the patient attention you have given to the testimony, I feel assured you will determine the facts of this case with intelligence and care, and that you will find a verdict which will be just.

The jury found a general verdict of guilty.